The Case.
Anthony Lawson was Seized in fee of 900 Acres of Land with a Parcel of Marsh adjoining and by Deed Poll dated 6. Sep’r 1693. for a valuable Consid’n say’d to be paid gives unto John Fulcher a Moiety of these Lands for his Life, and after his Death to revert to the Grantor, Then after his decease he gives a Moiety of the Land to his Son Tho’s his Heirs & Assigns, And the other Moiety in the same Deed he gives in these words “ And the other “ half of the s’d 950 Acres of Land that is to say, the Norther- “ most half with an equal proportion of the Marshes to the “ whole adjoining I do freely give to my Son Anthony Lawson ‘[1] and to his Heirs and Assigns for ever to be possessed therewith “ immediately after my Decease There was a Division made of the Land by an East & West line, And held Fulcher had a House and Plantation on the North side of the line, during his Life
The Grantor has Issue Tho’s his eldest Son and Heir by one Venter, and by the second Venter Anthony in the Deed mention’d and two Daughters Margaret the Wife of Charles Sayer and Elizabeth Late Wife of the Deft.
Anthony died in the lifetime of his Father without Issue. The Father died in the Year 1701. Tho’s enter’d and held the Land together and undivided with Fulcher and died leaving his Wife Ensient of a Son the Lessor of the Pit. After the death of Fulcher the Deft, ent’d A’o 1712. into the moiety given to Anthony and held it ever Since, And Charles Sayer and his Wife have Conveyed their right to the Deft.
The Question is Whether anything passed by this Deed to Ant’o the Son
[178] And I suppose the other side will insist That because Fulcher lived upon the Northern part of the Land which was Intended to be given to Anthony the Deed shall be Construed to give that moiety to Fulcher for Life, Rem’r to the Grantor for Life, rem’r to Anthony in fee, And then the Deft, will have a Title by marrying one of Anthony’s Sisters and by Conveyance from the other Sister, they being Sisters of the whole Blood and Heirs to Anthony
For if the Estate given to Anthony was to pass by way of *R69 Remainder, then it will not be material Whether he was ever Actually possessed of the Land
Now this is the Case of an Heir at Law & nothing is to be taken by Implication nor will the Court supply any words in prejudice to the Heirs title
It does not appear by the Deed whether the Northern Moiety or the Southern moiety was intended to be given to Fulcher And his living upon the Northern moiety being a matter of Ex-post facto cannot Influence the Construction of the Deed Neither was the dividing line intended to set a part Fulchers moiety But it is Agreed that after the death of Anthony the Father that Thos. his Eldest Son entered and held the Land together & undivided with Fulcher So that this dividing line* cannot affect the Case and the words of the Deed. That after the death of the Tenant for Life the Land shou’d Revert to the Grantor are of no Signification, for the Reversion in fee remained in him and wou’d vest again in possession of him or his Heirs after the death of Fulcher if these words had been Omitted. Then he proceeds and gives one moiety to Tho’s & Heirs Habend, after his death & the other moiety to Anthony & his Heirs Habend. likewise after his death, So that nothing was intended to vest in Anthony either in possession or Rem’r till after the death of the Father
It can’t be Construed to be a Rem’r in Anthony because there is no particular Estate to support it But it is merely a Grant of an Estate of Inheritance to Commence after the death of the father and no such Estate can by Law be granted
So is the Case of Pitfield and Pearce March 50. where a Case is Cited to be Adjudged in the Common Pleas That a Gift of a Rem’r after the death of the Grantor was void This Case of Pitfield & Pearce is Reported in 2. Rol. Abr. 789. Title Uses & is Cited 1. Vent. 139. 3. Lev. 372. [179] and the Authority of it not disputed Tho’ it is questioned by Pollexsen in an Argument of his in his Reports 529.
If that be Law, nothing passed to Anthony, but the Inheritance descended to the Lessor of the Pit. as Heir to his Grand-father Therefore I pray Judgmt
On the other Side, it was argued that this Deed might be Construed a Covenant to stand Seized, and that the Judges of late Years, if it were possible, wou’d find ways, that Mans Deeds might take effect According to their Intents and not be *R70 destroyed by a rigorous Construction, upon a seeming Repugnancy to the Rules of Law
And 1. Vent. 137. Crossing and Scudamore 1. Vent 372. Pybus and Midford. 3. Mod. 237. Harrison & Austin 3. Lev. 370. 2. Lev. 225. And the Court gave Judgm’t for the Deft, upon the Authority of those Cases, which do in my Opinion destroy the Authority of Pitfield and Pearce’s Case. So I think it is a good Judgm’t.